Edward G. Baker, J.
Petitioner, a teacher in a city public school, seeks an order restraining respondents from taking action to compel her disability retirement and from taking any punitive action for her refusal to retire, directing respondent, Superintendent of Schools, to restore petitioner to her teaching position and directing respondent, Board of Education (hereinafter referred to as Board) to pay petitioner her salary during the time respondent Board’s officials prevented her from serving in her position.
Petitioner alleges she was duly appointed a regular teacher of common branches in the elementary schools of the City of New York on or about September 9, 1927 and served as such continuously until May 20, 1960; that her services were rated ‘1 Satisfactory ’ ’ for each year during the 32 years ending June 30, 1959; that for the school year ending June' 30, 1960 the principal of the school in which she was serving rated her services “Unsatisfactory” and that such rating was unwarranted, arbitrary and capricious. Petitioner further alleges that on or about May 18, I960 said principal sent a letter to the assistant superintendent in the division of personnel of respondent Board requesting that petitioner be given a physical and medical examination. A copy of such letter is attached to the petition and states that petitioner had in the past year “ shown less adjustment and increasing difficulty to the problems involved in handling and controlling her class, and in effectively teaching her children.” The letter further stated:
‘ ‘ The history of the last 3% years during which I have supervised Miss Weisman indicates that the situation, in my opinion, has reached a point where I am suggesting that she he given a complete physical and medical examination.
*1040 “ During the past three years and particularly in the past year Miss Weisman has been unable to control daily fights and scenes of disorder within her second grade classroom, resulting in physical harm to children, the last incident of which occurred on Friday, May 13th, in which a child was injured when his head was banged on the desk in the classroom by another child.
‘ ‘ I am of the opinion that until the results of the medical examination, Miss Weisman should be relieved of classroom duties.”
Petitioner alleges that the principal’s letter contained exaggerations, misrepresentations and distortions of facts.
Petitioner was thereafter relieved of classroom duties and assigned to duty in the bureau of appointment and record at the headquarters of the Board in Brooklyn. She was directed to submit herself to an examination by a Dr. Shulman, a psychiatrist employed by respondent Board and was examined by bim on June 28, 1960 and July 2, 1960. She alleges on information and belief that largely on the basis of the principal’s letter and other statements and reports from the principal, Dr. Shulman reported to the school medical director that petitioner was suffering from a psychiatric disorder and was unfit to return to her teaching duties. During the period, May 20,1960 to February 6, 1962, petitioner was assigned by the Board’s division of personnel to the Board’s headquarters and was absent with pay at the direction of the Board’s division of personnel from September 9, 1960 to January 1, 1961, and from May 1, 1961 to February 2, 1962, such absences being charged against petitioner’s cumulative sick leave pursuant to the by-laws of the Board. From February 7, 1962 petitioner has been absent from duty without pay by order of the Board’s division of personnel although she alleges she was ready, willing and able to perform her duties during such time and that the refusal to pay her salary is in violation of her tenure rights.
In October, 1960 petitioner submitted to the school medical director a statement by two qualified psychiatrists who examined her, Dr. Lapovsky and Dr. Strauss. Dr. Lapovsky who examined petitioner on September 16, 1960 stated he found no evidence of bizarre behavior on the part of petitioner and from his study of her, felt she ‘ ‘ should be further evaluated by the school system, so she could be properly returned to her job.” Dr. Strauss, who examined petitioner on October 21,1960 stated in his opinion that petitioner was not suffering ‘ ‘ from any nervous or mental disorder which would prevent her to teach school with less efficiency now than she has done it for more than 30 years.”
Thereafter, by direction of the school medical director, petitioner submitted to further examination by Dr. Shulman. She *1041 stated the doctor was annoyed at her having gone to other doctors and indicated he would not change the opinion he had previously sent to the school medical director. On October 4, 1961 she was again examined by Dr. Strauss. After such examination Dr. Strauss sent another letter to the school medical director wherein he stated:
“ Miss Estelle Weisman, on whom I reported on October 24, 1960, was re-examined by me on October 4, 1961.
“ She has not varied since seen by me last. Again I could not find any evidence of a psychosis or psychoneurosis. My opinion is the same as that expressed in my previous report, namely that she is as well able now as she has been for many years to give continuous and efficient service as a teacher in the Public Schools of the City of New York.”
Petitioner was subsequently directed to submit to another examination by Dr. Shulman and did so on January 30, 1962. She states Dr. Shulman told her he would not change the opinion he had previously reported to the school medical director; that petitioner was suffering from a psychiatric disorder. Thereafter petitioner was directed to appear before another Board psychiatrist, a Dr. Morton Golden, who examined her on February 14, 1962. Petitioner states that after such examination Dr. Golden told her she could go back to her teaching position but added that the final decision was up to the school authorities.
Petitioner alleges that in late February or early March, 1962, the administrative director of the Board’s division of personnel informed her that the school medical director had reported she had been found to be suffering from a psychiatric disorder and that the Board would have to take steps to compel her retirement unless she voluntarily retired from service on September 19, 1962 when she would have credit for 35 years of service; that to avoid being labelled and officially recorded as a mentally ill person, on or about March 21, 1962 petitioner sent a letter to the administrative director stating it was her intention to retire from service on September 19, 1962. On or about September 5,1962 petitioner advised the Board she would like to resume service in September and requested that she be given a further examination by a Board psychiatrist since six months had elapsed since her last examination. Her request was denied and she was notified that if she did not voluntarily retire on September 19,1962 the Board would take the necessary action to have her retired for mental disability by the Teachers ’ Retirement Board. Petitioner asserts such action would be unjust and unwarranted and in violation of her tenure rights under section 2573 of the Education Law and that respondents’ *1042 attempt to force her disability retirement because of her alleged unsatisfactory services in the school year ending June, 1960 is to circumvent said section of the Education Law and to accomplish her removal without the preferment of charges at a trial at which she could be represented by counsel, cross-examine witnesses against her, and present witnesses on her own behalf.
Section 2568 of the Education Law empowers the Superintendent of Schools to require any person employed by the Board of Education to submit to a medical examination by a physician or school medical inspector of the Board, in order to determine the mental or physical capacity of said person to perform his duties whenever it has been recommended in a report in writing by a person under whose supervision or direction the person recommended for examination is employed. Pursuant to such section petitioner submitted to no less than six examinations by the Board’s psychiatrists between the period June 28, 1960 to February 14, 1962. With the exception of the report of Dr. Golden, annexed to respondents’ answer, none of the reports of such examinations is before the court. The report of Dr. Golden who examined petitioner on February 14, 1962, sets forth his psychiatric findings and. his conclusion that petitioner ‘ ‘ would find it very difficult to control a class of children. Since her previous performances were rated unsatisfactory, she should now be considered as psychiatrically unfit for further teaching duties.”
While petitioner attempts to impute improper and ulterior motives to the personnel of respondent Board, including the doctors who examined her and the principal on whose report her medical examination was directed pursuant to section 2568 of the Education Law, there is nothing in this record to substantiate her charges. Certainly petitioner has been given many psychiatric examinations over a period of almost 18 months which would at least indicate that respondents were not anxious to hastily or summarily cause her retirement. Furthermore, while she charges one of the doctors with bias and antagonism, it appears from the answer that such doctor had, following an examination of petitioner, recommended that she be given a leave of absence for six months and then re-examined and, again, after a subsequent examination, reported that some improvement was to be noted and that she might be able to resume teaching and recommended that petitioner resume teaching but at a different school. Petitioner’s assertion that Dr. Golden told her ‘ ‘ She could go back to her teaching position ” but added that ‘ ‘ the final decision was up to the school authorities ’ ’ is *1043 not borne out by the report of Dr. Golden annexed to the answer wherein he stated petitioner was psychiatrically unfit for further teaching duties.
The record, likewise, is devoid of any factual showing to indicate or sustain petitioner’s contention that respondent Board is attempting to circumvent the provisions of subdivision 5 of section 2573 of the Education Law which provides, inter alia, that persons who have served a full probationary period shall hold their respective positions during good behavior and efficient and competent service, and shall not be removable except for cause after a hearing. The report of petitioner’s principal contains no basis for preferment of charges against her such as is contemplated by section 2573 of the Education Law. Such section envisages charges based on misbehavior, inefficiency or incompetency in her position other than as a result of physical or mental disability attributed to the process of aging. Under section 2568 either a voluntary or involuntary retirement with pension rights, results, while a finding against a teacher under section 2573 can result in a reprimand, fine, suspension for a fixed time without pay, or dismissal from the service. The fact that respondents permitted petitioner to remain in the service, without performing her teaching duties — and after Dr. Shulman had reported in 1960 that in his opinion petitioner was suffering from a psychiatric disorder and was unfit to return to her teaching duties — until she should have accumulated 35 years of service and thus qualify for a superannuation retirement allowance, under sections 510 and 511 of the Education Law, would further indicate that respondents gave special consideration to petitioner rather than that they were prejudiced against her.
Under section 2568 the findings of the medical examination as to the mental or physical capacity of an employee to perform his duties, 1‘ may be referred to and considered for the evaluation of service of the person examined or for disability retirement ” and the duty to make a determination “ is imposed by statute upon the officials designated therein ” and the “ Courts may not substitute their judgment for that of the officers endowed by statute with the power to make such decisions.” (Collery v. Teachers’ Retirement Bd., 267 App. Div. 835, 836; Matter of Munter v. Theobald, N. Y. L. J., Feb. 14, 1962, p. 16, col. 4, affd. 17 A D 2d 854.)
It is the court’s opinion that petitioner’s rights have been fully protected, that the action of respondents was not taken for the purpose of circumventing section 2573 of the Education Law and that the determination is neither arbitrary nor capri *1044 cions and is in accordance with law. The cases cited by petitioner are either inapposite in their facts or distinguishable in law. The petition is dismissed and the stay contained in the order to show cause is vacated.